

**SIGNED this 20 day of June, 2011.**

_____

**JOHN T. LANEY, III**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____


IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 10-40882- JTL |
| JOHN S. PURSLEY & | ) | |
| KATHRYN L. PURSLEY, | ) | |
| | ) | |
| Debtors. | ) | CHAPTER 13 |
| _____ | ) | |
| | ) | |
| JOHN S. PURSLEY & | ) | |
| KATHRYN L. PURSLEY, | ) | |
| | ) | |
| Movants | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| ECAST SETTLEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

IN RE:                                    )
                                          )        CASE NO.: 10-40958-JTL
ELANA S. CRANE,                           )
                                          )
        Debtor.                           )        CHAPTER 13
_____)
                                          )
ELANA S. CRANE,                           )
                                          )
        Movant,                           )
                                          )
        v.                                )        CONTESTED MATTER
                                          )
ECAST SETTLEMENT                          )
CORPORATION,                              )
                                          )
        Respondent.                       )
_____)


                                          )
IN RE:                                    )        CASE NO.: 09-40967-JTL
                                          )
GARRY D. HAMBY,                           )
                                          )
        Debtor.                           )        CHAPTER 13
_____)
                                          )
GARRY D. HAMBY,                           )
                                          )
        Movant,                           )
                                          )
        v.                                )        CONTESTED MATTER
                                          )
ECAST SETTLEMENT                          )
CORPORATION,                              )
                                          )
        Respondent.                       )
_____)

**Memorandum Opinion**

These matters come before the Court on three objections to claim filed in three separate cases. John and Kathryn Pursley filed their objection on December 20, 2010; Elana Crane filed her objection on January 21, 2011; and Garry Hamby filed his objection on November 8, 2010. The objections share a common claimant in eCAST Settlement Corporation, and the matters share the same issues. The Court heard joint oral arguments on the objections on March 8, 2011. At the conclusion of the hearing, the Court took the matter under advisement and allowed the parties to file briefs. For the reasons set forth below, the Court sustains all three of the debtors' objections to claim.

**Background**

The proofs of claim at issue were filed by eCAST Settlement Corporation as the putative assignee of three debts. For the Pursley and Crane matters, the putative assignor is Citibank (South Dakota), N.A., and for the Hamby matter, the putative assignor is Chase Bank USA, N.A. All three debtors have these putative assignors listed in their schedules. At the hearing, eCAST's attorney said that all debts at issue were purchased postpetition.

The three proofs of claim at issue include similar information and attachments. Each identifies eCAST as assignee of the original creditor, and each claimed amount substantially matches the amounts scheduled (and in the Pursleys' case, the amount matches exactly). Attached to each proof of claim are copies of written blanket assignments of accounts.[1] In the cases of Crane and the Pursleys, the assignment identifies the assignor and assignee and states that Citibank (South

---

[1] Each of the attached assignments refers to, without elaboration, a separate purchase agreement (a "Purchase and Sale Agreement" in the case of the Pursleys and Crane, and an "Assignment of Accounts and Waiver of Notice of Transfer of Claims" in the case of Hamby). Each of these purchase agreements is dated prepetition, while the assignment documents themselves are all dated postpetition. At the hearing, the attorneys for the debtors took issue with the differing dates—they could not tell which documents were supposed to evidence the account assignments. If it was the prepetition documents, this would contradict eCAST's attorney's statement that all accounts were assigned postpetition. The attorney for eCAST stated that these purchase agreements for prospective assignments are standard for the industry.

Dakota), N.A., assigns to eCAST all "right, title and interest in and to the Accounts described in Exhibit 1 and the final electronic file." No exhibit or printout from the electronic files was attached. Each of the documents is signed by a representative of Citibank.

In the Hamby case, the assignment identifies the assignor and assignee and states that Chase Bank USA, N.A., assigns to eCAST "all right, title and interest in and to (i) certain unsecured consumer line of credit accounts and consumer  credit card accounts … which are described on computer files furnished by the Seller to the Buyer on a monthly basis ...." No printout of the computer file was attached.  The document is signed by a Chase Bank USA, N.A., representative.

Also attached to the original proofs of claim are identical sheets labeled "Explanation Of Unavailable or Voluminous Documentation Not Attached," which in relevant part states, "This claim arises from the use of a credit card debt.  Documentation related to the account is voluminous and/or may no longer be available. A summary of the account information is provided."  The summaries of account include much of the same information which is on the claim itself but also include the open dates and charge-off dates of the accounts.   At the bottom of each of these summaries is a paragraph stating, "Pursuant to paragraph 7 Official Bankruptcy Form 10, Proof of Claim, in lieu of attaching voluminous account documents, a summary of the account, compiled from the information contained in the account databases of [the assignor] and their agents, if any, is provided."

During the period between the objections and this opinion, eCAST amended each of the proofs of claim.  On December 16, 2010, eCAST amended its Hamby claim to add an Affidavit of Sale prepared by an authorized representative of Chase Bankcard Services, Inc., which states that based upon a review of Chase's records kept in the ordinary course of Chase's business, Gary Hamby had a credit card account with Chase that was sold to eCAST on or about October 15, 2009.

The account is identified by the last four digits of the account number, and the affidavit identifies the account balance and date of last payment. Also attached to the amended claim are five consecutive account statements covering the period between February 22, 2009, and July 21, 2009, which saw the account balance go from $20,561.88 to $20,064.14 and evidenced no purchases. The statements show finance charges for that particular period and also show the daily period interest rates and annual percentage rates for that period.

On March 4, 2011, eCAST amended its Crane claim to include the affidavit of an authorized representative of Citibank (who is also a custodian of business records), which states that to the best of the representative's knowledge, "based on either personal knowledge or review of the business records" of Citibank, Citibank transferred Elana Crane's account to eCAST on or about September 28, 2010. The account is further identified by the last four digits of the account number, the last four digits of the debtor's social security number, the account opening date, the account's final balance, and the last payment date. On April 11, 2011, eCAST again amended this claim to include eight consecutive account statements covering the period between December 18, 2009, and August 17, 2010, which saw the balance go from $1,664.05 to $1,618.00 and which evidenced no purchases. The statements include information for that month's finance charges, periodic interest rate, and annual percentage rate. The account statements are from an entity called AT&T Universal Card, and there is otherwise no explanation of a connection between the statements and Citibank; the bottom right corner of the statements, however, do indicate that AT&T licensed its logo to Citigroup, Inc.

On March 4, 2011, eCAST amended its Pursley claim with an affidavit identical to the affidavit described above for the Crane proof of claim amendment, the only difference being Pursley's account information instead of Crane's. Also included are thirteen consecutive account

statements covering June 2009 through June 2010, which saw the balance go from $4,035.32 to $4,510.47 and which evidences no purchases other than late fees and finance charges, which are labeled as purchases.  The account statements include information on that month's finance charges, periodic rate of interest, and annual percentage rate.  On April 1, 2011, eCAST again amended its claim to include a half-page Citi CashReturns Pre-Approved Application Form filled out by Kathryn Pursley.  This half-page form states only background information about the debtor, such as name, social security number, date of birth, phone number, and date; the top of the form indicates that the back of the form (not included in the proof of claim) contains "[d]isclosures, which include rates, fees and other cost information."

The debtors' original objections are identical in substance: all three parties objected to the sufficiency of the documentation attached to eCAST's proof of claim showing that eCAST is who the debtors owe money to.  At the hearing on the objections and in the debtors' response brief,[2] it was clear that there were two separate issues: the sufficiency of the documentation and the identity of the real party in interest.  Each of the debtors was present and willing to testify to the existence and validity of the underlying debt, to the identity of the original creditor, and to their never having heard of eCAST before filing their cases.  The parties stipulated to the same.  The attorney for the Pursleys stated at the hearing that he requested of Ecast certain of the underlying documents evidencing the assignment and that he was willing to agree to a continuance so that eCAST could have time to comply.  ECAST declined.  ECAST was adamant that it had sufficiently complied with the Bankruptcy Rules, and case law interpreting the Rules, and thus did not have to supply any extra documentation.  ECAST did not offer any evidence at the hearing.

---

[2] Only one of the debtors' attorneys filed a response brief, but it was understood, due to the similarities in the cases, that the one brief would speak for all debtors.

In its brief and at the hearing, eCAST asked the Court to reconsider its reasoning and decision in In re Stephens, 443 B.R. 225 (Bankr. M.D. Ga. 2010).

## Conclusions of Law

The objections and briefs raise several issues: (I) Should In re Stephens be rejected? (II) Do the proofs of claim comply with the requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 such that they are afforded prima facie validity? (III) If not, are they disallowable on the basis of noncompliance alone? (IV) Whether or not the proofs of claim comply with Rule 3001 and Official Form 10, what evidence, if any, is required upon objection to the claims such that the burden of persuasion to prove the claim shifts to the claimant?

### I.     In re Stephens

The Court in In re Stephens faced similar objections to proofs of claim, the main issue being in that case multiple assignments of single debts. The ultimate assignee acknowledged fatal defects in the chain of assignment. The Court wanted to call attention to a point of law many creditors and assignees were either unaware of or were ignoring:

> "The 'basic federal rule' in bankruptcy is that state law governs the substance of claims." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20 (2000) (quoting Butner v. U.S., 440 U.S. 48, 57 (1979)). Thus, "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions in the Bankruptcy Code." Id. (citing Butner, 440 U.S. at 55; Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161-62 (1946)). Whether a contract creditor or assignee, therefore, has the right to enforce a claim against a debtor in bankruptcy depends on the underlying state law governing the contract.

In re Stephens, 443 B.R. at 227. The Court further elaborated that under Georgia law, "an assignee to a contract must establish that there are no breaks in the chain of assignment to demonstrate that it is the real party in interest to bring a lawsuit." Id. The point of the opinion was to make clear that if an assignee cannot prove its claim in state court—more specifically, if the assignee cannot

establish a proper chain of assignment under state law—the assignee cannot prove its claim in

bankruptcy court.    State law governs the substance of claims.

As stated above, the assignee in <u>In re Stephens</u> admitted the it could not prove its claim in

state court because of missing links in the chains of assignment for multiple debts.    Thus the issue

was not fully briefed, and the Court unfortunately used overbroad language to describe a claimant's

duties when filing a proof of claim.    Specifically, the Court stated,

> [T]here are strict criteria for a valid assignment—and thus for a valid proof
> of claim.    There must be a agreement identifying both the assignor and assignee.
> There must also be documents or testimony identifying the account holder, account
> holder, and account balance.    If documents are used for this information, a proper
> foundation must be laid under the Business Records Act.    <u>See</u> O.C.G.A. § 24-3-14.
> If testimony is used for this information, and the testimony is unsupported by any
> business records, that testimony must be based on personal knowledge.    This list is
> not meant to be exhaustive but rather illustrative of the type of information to include
> to avoid obvious pitfalls.

<u>Id.</u> at 229.    This passage mistakes the criteria for a valid assignment for that of a valid proof of

claim.    To the extent that <u>In re Stephens</u> can be read to heighten the evidentiary burden for a proof

of claim, it is hereby disapproved.    However, the point still remains that state law governs the

substance of a contract claim, and assignees should not file proofs of claim for debts they cannot

establish in state court.    Put another way, creditors cannot use the Bankruptcy Code's expedited

claims-proving process, and its lower evidentiary burdens, to collect on a claim it could not prove

under state law.

## II.        Compliance with Rule 3001 and Official Form 10

"In analyzing objections to proofs of claim, bankruptcy courts must consider two primary

sources: the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure."    <u>In re O'Brien</u>, 440

B.R. 654, 658 (Bankr. E.D. Pa.  2010).  Rule 3001(c) states that "[w]hen a claim … is based on a

writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost

or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Rule 3001(a) mandates that a proof of claim "conform substantially to the appropriate Official Form," which is Official Form Number 10. Official Form No. 10's Paragraph 7 directs claimants to "[a]ttach redacted copies of any documents that support the claim," and further advises, without qualification, that claimants "may also attach a summary." Thus, Official Form No. 10 is "effectively incorporated through Rule 3001(a)" and "appears to relax the requirements of Rule 3001(c)" because it removes subsection (c)'s declaration that a statement of circumstances be filed *if the writing has been lost or destroyed.* In re O'Brien, 440 B.R. at 660.[3] Bankruptcy Rule 3001(f) further states, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

To comply with Rule 3001 and be entitled to prima facie evidentiary status, therefore, a claim based on a writing must attach one of two things: (1) the writing forming the basis for the claim or a duplicate or (2) a sufficient explanation or summary. See In re Tran, 369 B.R. 312, 316 (S.D. Tex. 2007). It is well-settled that claims based on credit card debts are based on writings. See, e.g., In re Armstrong, 320 B.R. 97 (Bankr. N.D. Tex 2005); In re O'Brien, 440 B.R. at 661 ("[C]ourts agree that a credit card agreement is based upon a writing and therefore, to comply with Rule 3001(c), the claimant also must file the 'writing' on which the claim is 'based.'").

In cases involving objections to proofs of claims based on credit card debts, two issues frequently arise: "(1) what documentation is necessary with respect to the debtor's contract with the original creditor and the amount of the debt arising therefrom; and (2) what documentation, if any, is necessary with respect to the assignment of the claim by the original assignee to the claimant."

---

[3] The current version of Official Form No. 10 has been in effect since December 2007. "Previously, the official form permitted the claimant to attach a summary of the document only if the documents were 'voluminous.' The requirement that the documents be voluminous as a precondition for attaching a summary in lieu of a copy of the document was deleted effective December 2007. There is no Committee Note from the Advisory Committee on Bankruptcy Rules explaining the change." In re O'Brien, 440 B.R. at 660 n.8.

In re O'Brien, 440 B.R. at 660.  Regarding the first issue, case law is split on whether the writing

on which credit card claim is based "is the credit card agreement, the transactional record of each

charge, or both the credit card agreement and a record of each transaction that is related to the

claim."  In re Irons, 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006).  Further complicating the first issue

is the Bankruptcy Rules' permission of allowing an explanation or summary in lieu of the original

or duplicate of the writing.  As discussed below, courts are also split on what constitutes a sufficient

summary or explanation.  Regarding the second issue, "courts have considered whether, in addition

to documenting the basis for the underlying indebtedness, Rule 3001(c) also requires the claimant

to document the assignment itself and, if so, what documents satisfy this additional requirement.

Bankruptcy courts are likewise 'split on the documentation required of an assignee to establish a

*prima facie* case' under Rule 3001(f)."  In re O'Brien, 440 B.R. at 661 (quoting In re Minbatiwalla,

424 B.R. 104, 113 (Bankr. S.D.N.Y. 2010)).

    If an examination of the caselaw has shown the Court anything, it is that the decisions exhibit

no common thread and that the decisions are highly dependent on each case's facts.  Other courts,

too, have noted the factual intensiveness of the inquiries involved with determining the sufficiency

of proofs of claim.  See, e.g., In re Samson, 392 B.R. 724, 733 (Bankr. N.D. Ohio 2008) (There is

"no bright-line test to determine the sufficiency of the written materials submitted by the creditor

for purposes of Bankruptcy Rule 3001. Courts, instead, determine the sufficiency of the

documentation attached to a proof of claim on a case-by-case basis.") (citations omitted)); In re

Moreno, 341 B.R. 813, 818 ("[T]he documentary evidence needed to establish and verify a claim

cannot be reduced to a bright-line test. Rather, it must be decided on a case-by-case basis.").  Further

clouding the issues is that courts disagree on seemingly fundamental issues such as what counts as

a "writing" forming the basis of a credit card claim. The Court will attempt to break down the issues

as best it can to make sense of the current state of the law.

**Writings on Which Credit Card Debt is Based**

As noted above, Rule 3001(c) requires that when a claim based on a writing, the original or

a duplicate be filed with the proof of claim, and case law is clear that claims based on credit card

debt are based on a writing. Again, however, courts disagree on what document(s) actually forms

the basis of a credit card debt: the underlying credit card agreement, writings evidencing individual

charges, or both.

One potential writing involved is the credit card agreement itself. The court in <u>In re Henry</u>,

311 B.R. 813, 817 (Bankr. W.D. Wash. 2004) held that the credit card agreement is the writing

forming the basis of a credit card debt, stating, "A credit card debt is a debt based upon a writing—a

credit card agreement. A loan, other than one based upon an oral agreement, is based upon a

writing—a promissory note. Accordingly, under Rule 3001(c), a creditor is required to submit a

copy of the credit card agreement or promissory note as proof of the existence of the debt." The

court further noted that other documentation might be required to prove interest accrued, late fees,

and other charges imposed under the agreement. <u>Id.</u>

Another view looks to the individual transactions forming the entire credit card debt. Taking

this approach, and disagreeing that the credit card agreement is the writing upon which credit card

debts are based, one court stated, "Every time a debtor uses a credit card it results in an electronic

and/or written transmission. … [I]t is not the underlying credit card agreement that creates the

debt—for that only establishes a line of credit that defines the terms of the parties [sic] future

transactions—it is the actual use of the line of credit that creates the obligation to repay. Each time

a debtor uses a credit card, the debtor makes an implied representation of her intent to repay the

debt. Whether such use is accomplished through a written or electronic transaction is irrelevant; it is based on a writing." In re Cluff, 313 B.R. 323, 334 (Bankr. D. Utah 2004) (footnote omitted). The court in In re Cluff concluded that for a credit card company to comply with Rule 3001(c), "it would have to produce the original or copy of a document, mechanical imprint, or some memorialization of an electronic transmission that formed the fundamental part that creates the legal obligation for each transaction a debtor makes during the period over which the debts were incurred." Id.

Yet another view is to conclude that *both* the credit card agreement and the writing evidencing the individual transactions form the basis of the debt. The court in In re Kemmer stated,

> In establishing a debtor's line of credit under a credit card or consumer credit account, the underlying agreement sets forth the terms and conditions upon which the account is based. It is true that the creation of the account itself does not create a debt upon which a claim may be based. However, once the debtor agrees to the terms and conditions set forth in the underlying agreement and draws against the line of credit, i.e., uses the card or account, and creates the actual debt, he is still bound by the terms and conditions of the underlying agreement. Accordingly, the court agrees that a claim for credit card or consumer credit account is based upon both the underlying agreement creating the account *and* the actual transactions creating the debt under the account.

In re Kemmer, 315 B.R. 706, 714 (Bankr. E.D. Tenn. 2004); accord In re Relford, 323 B.R. 669, 673-74 (Bankr. S.D. Ind. 2004).

**Sufficiency of Summary or Explanation**

The requirement for attaching an original or duplicate of the writings underlying the debts is tempered by the Bankrupty Rules allowing for a summary or explanation instead of the writings themselves. Whatever an individual court's requirements regarding the original or duplicate underlying writings, courts "agree[] that a summary of the debtor's use of the credit card will generally suffice," In re Relford, 323 B.R. at 674, and that "requiring the creditor to attach voluminous documentation to a proof of claim would put an unduly onerous burden upon the

creditor, as well as the debtor and the Chapter 13 trustee, who would be required to sift through the produced documentation in assessing the claim's validity." In re Kemmer, 315 B.R. at 715. The next issue, then, is what information must a summary or explanation include to suffice for Rule 3001(c), Official Form No. 10, and Rule 3001(f).

Because most credit card claimants avail themselves of Official Form No. 10's allowance of a summary in lieu of attaching originals or duplicates of underlying documents, many of the cases discussing the sufficiency of proofs of claim involve the sufficiency of this summary. The factual variation among cases in this area is considerable, and the decisions on this issue are notable for the wide range of sub-issues and requirements, and so an exhaustive overview is neither worthwhile nor possible. Simply put, bankruptcy courts cannot agree on what a sufficient summary looks like.

One recurring issue is the evidentiary import of the debtor's schedules. Oftentimes, the debt is scheduled as undisputed and listed in an amount substantially similar as on the claim. The decisions make clear that the debtor's schedules have no evidentiary value against an objecting trustee. See, e.g., In re Kirkland, 572 F.3d at 840-41; In re Burkett, 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005) ("[A] debtor's scheduling of a debt does not constitute an admission by a trustee.") Disagreement exists, however, on what a scheduled debt means for the proof of the corresponding claim. On one end of the spectrum are cases holding little (or no) information is required when there is no substantive dispute about the debt. See, e.g., In re Moreno, 341 B.R. at 818 ("[I]f a claim is scheduled by a debtor as undisputed and in an amount equal to or greater than the amount in the proof of claim, little, if any, documentation is necessary.") (citing In re Burkett, 329 B.R. at 828-29). Some courts go so far as to say that listing the debt as undisputed is a judicial admission that itself establishes a prima facie case regarding a proof of claim. See, e.g., In re Jorczak, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004). If the debtor schedules the debt but in an amount less than the claimant

claims due, "the proper objection is that the claimaint has not established its claim to the extent it exceeds the amount the debtor admits is owed," In re Moreno, 341 B.R. at 819 (citing In re Shank, 315 B.R. 799, 815 (Bankr. N.D. Ga. 2004)), and if there is insufficient documentation regarding the amount claimed, the claimant has not established a prima facie case for the excess amount. Id.

On the opposite end are cases holding that even if there is no substantive dispute and the debts are scheduled, the creditor must attach some documentation and cannot rely solely on the schedules. See, e.g., In re Kirkland, 572 F.3d 838, 840-41 (10th Cir. 2009) ("[The claimant] has failed to produce a single document to support its proof of claim. [The claimant] has also failed to explain its failure to provide supporting documentation."); In re Curry, 425 B.R. 841, 844-45 (Bankr. D. Kan. 2010) ("[T]he attachment of supporting documents, or at least an explanation for failure to provide such support, is absolutely necessary to an effective proof of claim based upon a writing."). At least one court on this side of the debate has deemed it improper to consider a debtor's schedules when determining the validity of a proof of claim. See In re Kincaid, 388 B.R. 610, 617 n.10 (Bankr. E.D. Penn. 2008) ("… I believe the proper application of the evidentiary burdens requires that I not look outside the proof of claim to determine its *prima facie* validity.").

Another recurring issue is the information required in the summary, and even more specifically, what form that information should take. It is clear that identifying the debtor, original account number, and amount due are essential, but a summary merely restating the conclusory allegations in the claim itself is insufficient. See, e.g., In re Shank, 315 B.R. at 809-810; In re Sandifer, 318 B.R. at 610. Outside of that basic information, what else needs to be included and itemized is a point of disagreement. Specifically, Official Form No. 10 includes a paragraph stating, "Check this box if claim includes interest or other charges in addition to the principal amount of the

claim.  Attach itemized statement of all interest or additional charges."  Credit card creditors and

assignees often leave the box unchecked and fail to attach any relevant itemization.[4]

    The apparent majority holds that some breakdown of charges is required.  See, e.g., In re

Cluff, 313 B.R. at 335 ("[I]f the claim includes charges such as interest, late fees and attorney's fees,

the summary should include a statement giving a breakdown of those elements."); In re Shank, 315

B.R. at 809 ("None of the summaries … includes any itemization or detail of the account.  For

example, they do not set forth an itemization of charges or even a separate statement of interest and

other charges that are included.  They do not show monthly activity (charges and payments) or

include a copy of the last statement."); In re Sandifer, 318 at 610-11 ("Neither the proofs of claim,

nor the attachments, initially filed by eCast provide adequate documentation, i.e., charges, payments,

fees, and interest."); In re Armstrong 320 B.R. at 106 ("[T]he creditor must attach an account

statement containing the debtor's name, account number, the prepetition account balance, interest

rate, and a breakdown of the interest charges, finance charges and other fees that make up the

balance of the debt, or attach enough monthly statements so that this information can be easily

determined."); In re Relford, 323 B.R. at 674 ("At a minimum, it must set forth the amount of the

debt, the name and account number of the debtor, account balance as of the petition date and a

breakdown of interest, late fees and  attorney fees if the debt includes such charges.").

    The minority view holds that such a breakdown of charges is unnecessary.  The court in In

re Osborne stated,

        This Court holds that a proof of claim filed for a credit card debt is not
required to include an itemized statement of all interest and additional charges, even
though finance charges are included in the amount of the claim. Credit card finance
charges are calculated periodically on the unpaid principal balance, which principal

---

[4] The Court notes that based on the Court's research of case law, eCAST has been a party to litigation over this issue
many times.  The issue was not briefed in this case, but judging from other decisions, eCAST's argument on this
point is that the balance as of the petition date is all principal, upon which other charges are potentially calculated
and added to during the next billing cycle.  This comports with the minority view, discussed below.

> balance generally includes any finance charges from prior periods which have not
> been paid.  In other words, finance charges are capitalized or compounded.  This is
> in contrast to many loans, such as closed end bank loans, where interest accrues only
> on unpaid principal.  Although such lenders maintain separate accountings of
> outstanding principal and interest, credit card companies generally do not do so for
> open end credit.  Further, for purposes of the allowance of unsecured claims, the
> Code makes no distinction between principal and accrued finance charges.  An
> itemized statement of all interest and additional charges is not required.

In re Osborne, 2005 WL 6425053, at *5  (Bankr. D. Kan. 2005) (footnote omitted).  The

Court notes that eCAST did not itemize interest charges and other fees in the proofs of claim in this

case.  Itemization of charges and fees is not at issue, but the Court is inclined to find the minority

view more persuasive.  In the credit industry, interest and finance charges for open-end loans are

treated differently than for closed-end loans. The new monthly balance given on credit card

statements is entirely principal, with any prior accrued interest or charges calculated into this new

principal.  The balance as of the petition date is thus all principal—there is nothing to itemize.

Another issue on which courts disagree is what form the summary must take.  Some courts

require the summary to take the form of a business record or some equally reliable format.  See, e.g.

In re Cluff, 313 B.R. at 335.  Other courts require a monthly statement generated for the debtor's

account or a computer-generated statement of the account as of the petition date.  See, e.g., In re

Kemmer, 315 B.R. at 716.  Still other courts demand no special format.  See, e.g., In re Porter, 374

B.R. 471, 482 (Bankr. D. Conn. 2007) (noting that Federal Rule of Evidence 1006 does not require

summaries to take any particular form).  The Court finds the more persuasive view to be that the

summary need not take any official or particular form.  Not only does Federal Rule of Evidence
1006

not require anything particular, but Bankruptcy Rule 3001(c) refers merely to attaching "a statement

of the circumstances" of a lost or destroyed writing, and Official Form No. 10 states without

restriction that a claimant "may also attach a summary."

**Required Attachments for Assigned Claims**

Because claims based on credit card debt are often filed by assignees of the original creditor, a common point of contention is what documentation of the assignment is required, if any, by the Rules. "Bankruptcy courts are 'split on the documentation required of an assignee to establish a *prima facie* case' under Rule 3001(f)." In re O'Brien, 440 B.R. at 661 (quoting In re Minbatiwalla, 424 B.R. at 113).

Some courts require no documentation of assignments. The argument supporting this position is based on Bankruptcy Rule 3001(e) and corresponding Advisory Committee Notes. Rule 3001(e) states, in relevant part,

> (e) Transferred Claim.

> (1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.

> (2) Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, *evidence of the transfer shall be filed by the transferee*. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

Fed. R. Bankr. P. 3001(e) (emphasis added). Advocates of this view note subsection (e)(1) does not require evidence of the transfer while subsection (e)(2) states that "evidence of the transfer shall be filed by the transferee." This inclusion in (e)(2), the argument goes, gives importance to the omission in (e)(1). This contention is buttressed by Advisory Committee Notes explaining the 1991 amendments to Rule 3001(e). Those notes say that Rule 3001(e) was "amended to limit the court's

role to the adjudication of disputes regarding transfers of claim. If a claim has been transferred prior

to the filing of a proof of claim, there is no need to state the consideration for the transfer or other

evidence of the transfer." ECAST argues this in its brief and has argued the position in other courts.

One court, when faced with the argument, granted eCAST's motion to reconsider and admitted that

it erred in holding eCAST needed to attach proper assignment documents.  See In re Relford, 323

B.R. at 679-81; see also In re Cox, 2007 WL 4219407, at *4 (Bankr. W.D. Tex. 2007) (declining

to require attachment of proof of assignment).

On the other side of the debate are courts that require some type of documentation of

assignments, be it the assignment documents or a summary. In another case involving eCAST,

replying to the above argument, the court stated,

> I agree that some courts have found this argument persuasive.  I respectively [sic]
> disagree, aligning myself with those courts that view Rule 3001(e)[(1)] as merely
> establishing who is entitled to file a proof of claim and not what evidence is
> necessary to prove its ownership.  It is counterintuitive to conclude that an assignee
> has less of a burden to establish its claim than a direct creditor.  Rule 3001(e)[(1)]
> has a purpose separate and apart from the establishment of a claim.  It is intended to
> make clear that disputed prepetition claim transfers are not an issue for the court's
> concern.  That is not the point of requiring evidence of ownership for claims
> allowance.  By demanding the identification of the owner of a claim to ensure the
> Debtor has an obligation to pay that creditor and, in exchange will receive a
> discharge of its debt, Debtor is not seeking to challenge the transfer but merely to
> confirm that one has taken place. [5]

In re Kincaid, 388 B.R. 610, 616-17 (Bankr. E.D. Pa. 2008) (citations omitted) (citing In re Kendall,

380 B.R. 37, 47 n.11 (Bankr. N.D. Okla. 2007); In re Povey, 2008 WL 1376271, at *6 (Bankr. E.D.

Okla. 2008)).  Agreeing with the logic employed by the court in In re Kincaid, the court in In re

O'Brien concluded that "a proof of claim filed by an assignee is 'based,' in part, on the assignment."

---

[5] In the actual quotation, the opinion refers to Rule 3001(e)(3).  This can only be an oversight.  That subsection
makes no sense in this context, and the Court assumes the opinion meant to refer to subsection (e)(1).

440 B.R. at 662.  Thus, to satisfy Rule 3001(c), "as assignee filing a proof of claim must attach the written assignment or set forth a summary of the document."  Id.

Some bankruptcy courts require attachment of the transfer documents themselves.  See, e.g., In re Hughes, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004) ("In the event the claimant is an assignee of a debtor's original creditor, a claimant must attach a signed copy of the assignment and sufficient information to identify the original credit card account."); In re Armstrong, 320 B.R. at 106 ("The transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim."). More accordant with the text of Rule 3001 and Official Form No. 10, this Court believes, are the cases allowing for the assignment documents *or* a summary of the transfer and chain of assignment. Under such a rule, "[a] proof of claim that attempts to satisfy 3001(c) by providing a summary rather than attaching the assignment documents must describe the chain of title leading to the assignee in detail and in a clear and coherent manner."  In re O'Brien, 440 B.R. at 663.

### III.    Effect of Compliance or Non-compliance with Rule 3001

Bankruptcy Rule 3001(f) states that a claim "filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  If a proof of claim achieves prima facie evidentiary status, the burden of going forward with evidence contesting the claim shifts to the objector.  E.g., In re O'Brien, 440 B.R. at 659.  The difficult issues arise when a claim does not comply with the Bankruptcy Rules' claim-filing mandates and thus is not considered prima facie evidence of the claim's validity and amount.

Section 502(a) of the Bankruptcy Code states a claim is "deemed allowed," unless a party in interest objects.  Section 502(b) further provides that once a party objects, and after notice and hearing to determine the amount of the claim, the court "shall allow such claim" except to the extent the claim falls within any of the nine enumerated exceptions listed in subsections (b)(1) to (b)(9).

Failure to comply with Bankruptcy Rule 3001 is not listed as an exception permitting a court to disallow a claim.  A split among courts currently exists on whether noncompliance with Bankruptcy Rules 3001(a) and 3001(c)—resulting in a lack of prima facie validity under Rule 3001(f)—is grounds for disallowance of the a claim.

The majority holds that § 502(b) provides the exclusive grounds for disallowance of claims. The minority view is that noncompliance with the rules regarding proof of claim can lead to disallowance: insufficiency of a proof of claim is a valid ground for objecting; if the claimant does not remedy the deficiency via amendments or at the hearing on the objection, then the claim must be disallowed.  The Tenth Circuit Bankruptcy Appellate Panel, in a well-researched and informative opinion on the split in case law, labeled these views the "exclusive view" and the "nonexclusive view."  See generally In re Kirkland, 379 B.R. 341, 343-47 (B.A.P. 10th Cir. 2007).  This opinion will use these helpful labels to describe the two sides.

In another instructional opinion, the court in In re O'Brien examined the case law on the split in authority and collected the rationales courts have used to justify the majority position.  The court stated,

> First, some courts reason that the outcome is dictated by the plain language of 11 U.S.C. § 502(b), which does not include the failure to comply with the rules of court as a ground for disallowance, along with the principle that the rules of court may not modify substantive rights grounded in the statute. *See, e.g.*, *Kirkland*, 379 B.R. at 345.
>
> Second, some courts express concern that the contrary rule would undermine the integrity of the bankruptcy system, permitting debtors, in particular, to invoke technical grounds to defeat claims that they would otherwise have to concede are valid. … Judge Fehling of this court overruled claims objections "because the Objections do not attack Debtor's liability for the claims or the amount of the underlying debts, but instead are based solely on the argument that the claims should be disallowed because they do not attach the documentation required by Rule 3001(c)."  Underlying this line of cases is a legitimate concern that a contrary outcome might permit debtors to employ the Rule as a tool "to object to claims they admittedly owe based on perceived evidentiary advantages." *Kincaid,* 388 B.R. at 618.

A third rationale for the majority position may be derived from the historic principle in proof of claim jurisprudence that a proof of claim should be treated as if it were a verified complaint or a deposition. This has been the practice under both the Act and the Code.  When a proof of claim is conceptualized as evidence (rather than as a pleading), it becomes apparent that the proof of claim may include sufficient detail regarding the claim for a court to accord it *prima facie* status and require the objector to come forward with some evidence to contest the claim, even though the proof of claim does not comply with all of the requirements of Rule 3001.

Fourth, the majority view finds support in the overall purpose and functioning of the claims resolution process. The process is designed to achieve the fair and inexpensive resolution of claims objections through a summary procedure that mirrors, but does not slavishly conform to, the formalities of conventional civil litigation. *See In re Sacko,* 394 B.R. at 99 (citing *In re Shank,* 315 B.R. 799, 814 (Bankr. N.D. Ga.2004)). To accomplish this purpose, courts must be practical and flexible, not rigid, in their application of the rules of court, *see* Fed. R. Bankr. P. 1001, and strike a balance between the interest of the claimant in setting forth its claim without undue burden or expense and the interest in the debtor or trustee in obtaining sufficient information to permit evaluation [sic] the claim's validity without under [sic] burden or expense.

In re O'Brien, 440 B.R. at 664-65 (footnotes omitted).

While the exclusive view is the clear majority position, the debate is not one-sided.[6]  In fact, the only Circuit Court of Appeals to address the issue held that lack of documentation was grounds for disallowance.  In In re Kirkland, 572 F.3d 838 (10th Cir. 2009), the court reversed the instructive Tenth Circuit Bankruptcy Appellate Panel decision discussed above.  The court reasoned,

The bankruptcy court appropriately determined that because B-Line bore the burden of proof for its claim and failed to meet its burden, its claim was disallowed. *See In re Kirkland*, 361 B.R. at 205.  The plain language of the Bankruptcy Code and its associated procedural rules support the court's ruling. The Bankruptcy Code provides that "[a] creditor ... may file a proof of claim." 11 U.S.C. § 501(a). Because the code does not define "proof of claim," we look to the Federal Rules of Bankruptcy Procedure. "A proof of claim is a written statement setting forth a creditor's claim.... [It] shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). The relevant form is Official Form 10, which requires a claimant to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." Fed. R. Bankr.

---

[6] The following is a nonexhaustive list of cases taking the minority view: In re Kirkland, 572 F.3d 838 (10th Cir. 2009); In re Tran, 369 B.R. 312  (S.D. Tex. 2007); In re Depugh, 409 B.R. 84 (Bankr. S.D. Tex. 2009); In re King, 2009 WL 960766 (Bankr. E.D. Va. 2009); In re Henry, 311 B.R. 813 (Bankr. W.D. Wash. 2004).  The nonexclusive view appears to be an emerging trend.

> P. Official Form 10. Form 10 also instructs a claimant that "[i]f the documents are
> not available, please explain." *Id.* When a proof of claim is executed and filed in
> accordance with the provisions of Rule 3001 (including Official Form 10), it
> "constitutes prima facie evidence of the validity and amount of the claim." Fed. R.
> Bankr. P. 3001(f).
>
> B-Line has failed to produce a single document to support its proof of claim.
> B-Line has also failed to explain its failure to provide supporting documentation. …
> Therefore, B-Line has failed to present "prima facie evidence of the validity and
> amount of the claim." *Id.* In response to the Trustee's objection, the bankruptcy court
> held an evidentiary hearing. Even then, B-Line produced no evidence in support of
> its claim and no explanation for its failure to do so. On this record, we conclude that
> the bankruptcy court appropriately disallowed B-Line's claim. Had the bankruptcy
> court allowed B-Line's claim despite B-Line's failure to provide either supporting
> evidence or an explanation for its failure to provide supporting evidence, the burden
> would have improperly rested with the Trustee to disprove an unsubstantiated claim.

In re Kirkland, 572 F.3d at 840-41 (alterations in original).  The Tenth Circuit B.A.P.'s opinion

included a lengthy justification for the exclusive view and numerous reasons against the

nonexclusive view, see In re Kirkland, 379 B.R. at 343-54, and so the Court of Appeals' two-

paragraph analysis of the case is conspicuous in its brevity.  Not addressing the points the B.A.P.

discussed somewhat undercuts the persuasiveness of the Court of Appeals' opinion, but this Court

nevertheless sympathizes with "the intuitive position that court rules adopted to facilitate

administration of claims allowance process should be enforced" and the belief that "[e]nforcement

of a court rule usually requires that there be an adverse consequence to a litigant who fails to comply

with the rule."  In re O'Brien, 440 B.R. at 665.  The Court acknowledges the friction created by §

502(b), which does not allow for an extratextual exception to allowance, and a Bankruptcy Rule that,

with a commonsense interpretation, militates in favor of disallowance.

Fortunately, the Court need not tackle the divisive issue.  The Court concludes that eCAST's

proofs of claim include sufficient documentation to grant them prima facie validity.  The Court need

not delve into the complexities of what it does and does not consider sufficient documentation.  This

is not a close case, and a deeper discussion would be warranted with a more marginal proof of claim.

Suffice it to say that each proof of claim included ample summaries and copious attachments and

contained information that was not merely conclusory restatements of information in the claim itself.

### IV.    Objection Procedure and Evidentiary Burdens

As stated above, Bankruptcy Rule 3001(f) creates a presumption of prima facie validity for

proofs of claim filed in accordance with the Bankruptcy Rules.  What happens to an objection to a

proof of claim depends on whether the proof of claim has prima facie validity and whether the court

has adopted the exclusive or nonexclusive view.

If the proof of claim complies with the Rules and is presumptively valid, the burden

of production shifts to the objecting party.  See, e.g., In re DePugh, 409 B.R. at 97; see also In re

Cluff, 313 B.R. at 336 ("If a proof of claim enjoys this evidentiary presumption, the objecting party

has the burden of coming forward with evidence to support its objection and rebut the proof of

claim.").  An often-repeated but inaccurate statement of the law is that if the objecting party

overcomes the prima facie validity of the claim, the burden shifts to the claimant to prove its claim

by a preponderance of the evidence.  See, e.g., In re Chambliss, 315 B.R. 166, 169 (Bankr. S.D. Ga.

2004).  While that will be true most of the time, the more precise statement of the law is that "the

burden of proof will fall on whichever party would bear that burden outside of bankruptcy." *Collier*

*on Bankruptcy* § 3001.09[2], at 3001-28 (16th ed. 2010) (citing Raleigh v. Illinois Dep't of Revenue,

530 U.S. 15, 20 (2000)).  State law governs the substance of claims in bankruptcy, Raleigh, 530 U.S.

at 20, and "the burden of proof is an essential element of the claim itself."  Id. at 21.  Thus whoever

would have the burden of proof under substantive state law has the ultimate burden of persuasion

after the objector rebuts the presumption of validity.

As for what the objector must initially produce to rebut the presumption, one

generally accepted and often-quoted standard of proof is stated in In re Allegheny International, Inc.,

954 F.2d 173-74 (3rd Cir. 1992): "The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."

If the proof of claim does not comply with Rule 3001 such that it is not afforded presumptive validity under Rule 3001(f), the treatment of the claim and objection depends on whether the court is in the majority or minority.

**Exclusive View**

The courts taking the exclusive view will not disallow a claim objection solely alleging lack of proper documentation. See, e.g., In re Shank, 315 B.R. at 811. These courts essentially "make no distinction between *objections to claims* and *disallowance of claims*, and have taken the position that the only bases for objecting to a claim are those enumerated in § 502(b)." In re Kirkland, 379 B.R. at 355 (Michael, J., dissenting); see also In re Heath, 331 B.R. 424, 431 (B.A.P. 9th Cir. 2005) ("The statute sets forth the sole grounds for objections, which do not include lack of compliance with Rule 3001(c)."). Further justification for this view can be seen in In re Shank. There, the court reasoned that disallowance in not a proportional or equitable response to what is essentially a pleading deficiency, especially when accounting for the lack of a substantive dispute over the debt. See In re Shank, 315 B.R. at 811-12. That court also found justification in Bankruptcy Rule 1001, which directs bankruptcy courts to construe the rules "to secure the just speedy, and inexpensive determination of every case and proceeding," with the court noting that given the economic realities of uncertainty of eventual recovery for creditors, the expense of responding to objections might easily exceed any potential return. Id. at 812. The court stated, "Rule 1001's directive requires a

bankruptcy court to apply the bankruptcy rules to permit  creditors to realize their fair share in a

bankruptcy case without unnecessary expense.  If there is no underlying dispute about the validity

or amount of a proof of claim, there is no legitimate reason to penalize a holder because it does not

meet all the technical requirements of the bankruptcy rules that are designed to govern the fair

determination of disputes."  Id.

Some courts taking the exclusive view will look at a noncompliant proof of claim as at least

"some evidence" of the claim, to which an objection must at least offer evidence of a substantive

dispute sufficient to equalize the evidence in the proof of claim.  As one court put it,

> If the creditor presents some evidence in the claim, even though the entire claim is
> not *prima facie,* the creditor has still fulfilled its initial burden of proving that fact
> in its claim unless the evidence is rebutted. Therefore, a claim that contains
> undisputed or unchallenged evidence on its face still presents evidence of a right to
> payment or to an equitable remedy. If a claim is not granted *prima facie* validity, a
> formal objection coupled with some evidence which tends to "meet, overcome, or
> at least equalize" the statements on the proof of claim is sufficient to rebut the claim.
> But it is not enough for a debtor to file a mere formal objection without more ….

In re Cluff, 313 B.R. at 337-38, aff'd, Cluff v. eCAST Settlement, 2006 WL 2820005 (D. Utah

2006) (footnotes and internal quotation marks omitted).  Courts adopting this "some evidence"

analysis often reason that the claim itself has some weight because the claim is submitted under oath,

with penalties up to $500,000 and five years in prison.  See, e.g., Id. at 338; In re Mazzoni, 318 B.R.

576, 578-79 (Bankr. D. Kan. 2004).

Still another way courts taking the exclusive view handle noncompliant proofs of claim is

by stating that the burden never shifted to the objector and that the claimant still has the burden of

proof.  The court in In re Shank stated that "at a hearing on a substantive objection to a proof of

claim that lacks sufficient documentation, a claimant who fails to amend the proof of claim to

include adequate documentation will have the burden of going forward as well as the ultimate

burden of proof to establish its claim because the proof of claim would not be entitled to the Rule

3001(f) presumption of validity." <u>See also</u> <u>In re Armstrong</u>, 320 B.R. at 105 ("[L]ack of proper

supporting documentation does not, in and of itself, result in a claim's disallowance; rather, it strips

it of any *prima facie* validity, requiring the creditor to offer the supporting documentation to carry

its burden of proof in the face of an objection.")

      A common theme in cases taking the majority view, perhaps as a reminder to creditors who

might abuse the system, is for the court to state that underlying documents must be made available

for inspection when a creditor attaches a summary in lieu of original documents. <u>See, e.g.</u>, <u>In re</u>

<u>Heath</u>, 331 B.R. 424, 436 (B.A.P. 9th Cir. 2005) ("[C]reditors have an obligation to respond to

formal or informal requests for information. ... This obligation to respond applies regardless whether

Creditors have met their obligation to provide a summary under Rule 3001(c)."); <u>In re Kemmer</u>, 315

B.R. at 715 ("The presentation of a summary ... does not relieve the creditor of the responsibility to

produce the actual documentation, irrespective of the volume thereof, if requested by the debtor or

Chapter 13 Trustee."); <u>In re Cluff</u>, 313 B.R. at 335-36 ("[U]sing a summary also requires the creditor

to make the underlying documents available for examination at a reasonable time and place, and

such creditors should not underestimate the Court's willingness to compel them to do so."); <u>In re</u>

<u>Vann</u>, 321 B.R. 734, 736 (Bankr. W.D. Wash. 2005) ("The filing of a summary ... does not relieve

a creditor of its obligation to provide all documents supporting the claim to the debtor upon

request."). This comports with Federal Rule of Evidence 1006, which states, "The contents of

voluminous writings ... which cannot conveniently be examined in court may be presented in the

form of a ... summary .... The originals, or duplicates, shall be made available for examination ...."

The cases are clear, however, that the debtor or Trustee cannot impose a request for documents

merely as a fishing expedition, attempting to bog down a creditor with drudging up multiple

documents or forcing a creditor into a cost-benefit analysis to determine whether procuring the

documents is more expensive than the claim.  See, e.g., In re Habiballa, 337 B.R. 911, 916 (Bankr. E.D. Wis. 2006).  These courts require that the request have some substantive basis—that is, an objector not disputing the amount or validity of the debt has no reason to examine the underlying documents.  See, e.g., In re Shank, 315 B.R. at 816.  Not furnishing requested documents can lead to the claim's disallowance.  See, e.g., Id. (After ignoring a request for documents, a creditor with a deficient claim "may well find itself with a disallowed claim."); In re Heath, 331 B.R. at 437 ("If the creditor does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim ....").

**Nonexclusive View**

Courts taking the nonexclusive view, of course, allow for objections based solely on lack of documentation.  The reasoning has an appealing simplicity: an objecting party must introduce evidence sufficient to overcome the prima facie effect of a properly filed claim; if the claim is not prima facie valid, there is no evidentiary hurdle for the objector.  See, e.g., In re Tran, 369 B.R. at 317 ("[B]ecause eCast's claim had no presumption of validity, Tran had no evidentiary burden to overcome in objecting to eCast's claim."  Allowing a claim without adequate documentation, according to this view, would improperly place the burden on the objector to disprove an unsubstantiated claim.  See In re Kirkland, 572 F.3d at 841.

Although the original objections were couched in terms of lack of documentation, at the hearing, and in the objecting brief, it was apparent that the objections had more to do with the debtors not owing any money to eCAST or that eCAST could not prove its was owed money under state law.  Put another way, the objection was prompted by the lack of documentation but is not based on lack of documentation.  The distinction is not trivial.  Section 502(b) states that a claim can be disallowed to the extent that is unenforceable against the debtor under state law.  Although it is

understandable that some might see tweaking the objection like this to be a cagey attempt to turn

a technical, formal objection into a substantive one, the Court will not overrule the objection on

those grounds, for several reasons.

To start, it *is* a substantive objection if a party claims not to owe money to another

party; that goes directly to the validity of the claim.  It is not enough "that the debtor owes *someone*

money; the issue is whether the debtor (and hence the bankruptcy estate) owes it to the party filing

the proof of claim."  In re King, 2009 WL 960766, at * 5 (Bankr. E.D. Va. 2009).  Moreover,

allowing a debtor to object on the basis of not knowing who a creditor is  (and thus not owing it

money) serves a greater purpose in forcing anonymous buyers of mass consumer debt not to be

sloppy in their purchase transactions.  In particular with a business like eCAST, which buys the

debts of people who have already filed for bankruptcy, it ensures that the businesses keep enough

information on hand sufficient for a valid assignment under state law. As discussed above, state law

governs whether a claim in bankruptcy is valid; the Court does not want the bankruptcy code's

expedited claims-proving process and lower evidentiary burdens to be a circumvention for

companies who cannot prove their claims in a state court.  And finally, as a reason specific to this

case for allowing the objection after the original objection was based solely on lack of

documentation, eCAST filed a lengthy brief filled with copious authorities only a few days before

the hearing on the objections.  That brief crystallized eCAST's position and the relevant issues.  The

hearing and the response brief filed by one of the debtors (which is applicable to all debtors in this

case) made clear that the objection was based on § 502(b)(1): the debtors object to the claims

because they allege the claims are unenforceable under state law.

Under the procedure of this Court, a debtor needs to object and offer evidence sufficient to

rebut the evidence offered by the claimant, and the objector's evidence must negate at least one

allegation that is essential to the claim.  If the objecting party succeeds, the burden then shifts to the claimant (assuming the claimant has the burden under state law) to prove the claim by a preponderance of the evidence.  The court will then look to state law to determine if the claimant has met his or her burden in proving the claim.

An allegation essential to any claim is that the claimant is the proper party in interest; regarding assignments, one essential allegation is that the claimant can prove its assignment under state law.  The attachments to eCAST's claims showing it is the proper party in interest are the following.

For the Pursleys, attached is a Bill of Sale and Assignment assigning unidentified "Accounts described in Exhibit 1 and the final electronic file" from Citibank (South Dakota), N.A. to eCAST. No Exhibit 1 or printout from a final electronic file is attached.  There is some ambiguity in the dating, with the document being titled "Bill of Sale and Assignment" yet referring to a separate sale agreement dated June 24, 2010, while the document itself is dated July 27, 2010.  There is also an affidavit from an employee of Citicorp Credit Services identifying the debtor-wife by name, last four digits of the original account number, last for digits of her social security number, account balance, and date of last payment; the affidavit states that "[t]he records of Citibank indicate that the record was sold to ECast Settlement Corporation on or about 07/27/2010."

For Ms. Crane, attached are the same documents with the identical boilerplate language, updated to reflect a different debtor.  Again there is an ambiguity in dates—the document labeled Bill of Sale and Assignment is dated September 28, 2010 but the document refers to a sale agreement dated June 24, 2010.  The affidavit states "[t]hat records of Citibank indicate that the record was sold to ECast Settlement Corporation on or about 09/28/2010."

For Mr. Hamby, there is a document labeled Assignment of Accounts and Waiver of Notice of Transfer of Claims assigning all rights to unidentified "certain unsecured consumer line of credit accounts and consumer credit card accounts ... which are described on computer files furnished by the Seller to the Buyer on a monthly basis" from Chase to eCAST. The same ambiguity in dates exists here, with the assignment dated October 21, 2009, and the document referring to a sale date of January 12, 2009. Attached is also an affidavit signed by a Chase Bankcard Services representative dated November 19, 2010, identifying the debtor, the last four digits of the original account number, the debt balance, and the date of last payment.

Against this, each debtor was present to offer testimony alleging that they had no prior dealings with eCAST, that they did not know anything about eCAST, and that they have never owed eCAST any money.[7] The first issue is whether this testimony is sufficient to negate eCAST's claim that it is the real party in interest to collect on the claim. The Court finds that under the present circumstances, the debtors' testimony is sufficient to negate eCAST's claim that it is the real party in interest.

The Court acknowledges that eCAST attached multiple documents evidencing and assignment and that this is a close case, but the Court is swayed by a few things. Debtors are at a substantial disadvantage in knowledge when it comes to assignments, especially in the context of consumer debt. There is not much evidence a debtor *can* produce to prove no assignment has taken place or that the claimant is not the real party in interest—the task for a debtor is essentially to prove a negative. One of the hazards of being an anonymous purchaser of mass consumer debt is that the people you try to collect from have no idea who you are or why you are demanding money from them. Compounding this is eCAST's unwillingness to furnish underlying documentation proving

---

[7]This testimony was never given because the parties stipulated to these facts. The amount and validity of the underlying debt was also not in dispute.

the assignment upon request.  Although this unwillingness is not squarely in issue in that no debtor's attorney is arguing for disallowance on that basis, the Court cannot ignore it.  As discussed above, the case law is clear that a claimant *must* supply the underlying documents upon request.  That directive is even more important where an assignment is at issue—viewing the underlying documents is a way to neutralize the knowledge disparity.

The Court has noted several times the ambiguous dating on the assignment documents.  The debtors' attorneys brought this to the Court's attention at the hearing.  As discussed earlier, eCAST's attorney stated at the hearing that it is standard practice for companies to enter into a sale agreement for a large number of assignments and for the agreement to have future effect.  While it might be common practice in certain circles, it is not common knowledge to everyone.  It is the duty of debtors' attorneys to examine proofs of claim and ferret out potential discrepancies.  This protects the debtor and the bankruptcy estate from frivolous or sloppy claimants.  A supposed discrepancy in dates is the type of thing that could result from sloppy record keeping, and sloppy record keeping is the type of thing that can lead a debtors' attorney to doubt the veracity of a proof of claim.  The Court mentions this as a further reason why the debtors' attorneys were justified in putting up a fight against eCAST.

Having found that the burden of persuasion has shifted, the final issue is whether eCAST carried its burden of persuasion at the hearing.  As stated above, eCAST introduced no evidence at the hearing.  ECAST offered only legal arguments on why it should be able to stand pat on its proof of claim.  Even if the information and documents in the proof of claim were entered into evidence, they do not show a valid assignment under Georgia law.  The written assignments refer to outside sources describing the accounts being assigned—in the cases of Crane and the Pursleys, the assignment refers to "Accounts described in Exhibit 1 and the final electronic file," while in the case

of Hamby, the assignment refers to "certain unsecured consumer line of credit accounts and consumer credit card accounts … which are described on computer files furnished by the Seller to the Buyer on a monthly basis ...." However, no copies or printouts of these files or exhibits are attached.  The assignment documents merely assign unidentified accounts of unidentified debtors for unspecified amounts.

The Court wants to end this opinion on a certain note.  The Court will not shy from its concern that assignees are filing claims for debts they cannot prove in state court.  As stated several times in this opinion already, bankruptcy is not a shortcut for claims unprovable elsewhere.  Debtors seeking out claims that cannot be proved in state court is a legitimate undertaking.  This would not be an issue if assignees of mass consumer debt had a better track record in proving their claims when the burden of proof is on them.  The Court, and debtors' attorneys, would not be so initially doubtful if it had not seen so many assignees who could not produce documents showing they could actually prove their claims. The Court understands that a business like eCAST will often be in the position of having purchased debt from another entity and then having to decide whether it is cost effective to actually pursue a particular claim, with the act of producing documents themselves oftentimes costing too much.  However, "[t]he fact that a party's business practices make it difficult to produce evidence to prove its case does not permit courts to ignore evidentiary rules in deciding a disputed matter."  In re Shank, 315 B.R. at 810.

### Conclusion

The Court will sustain the debtors' objections to claim.  Orders in accordance with this memorandum opinion will be entered.